JOHNSON, Judge.
Plaintiff has appealed from a judgment denying its right to seize by preference by writ of garnishment certain funds in possession of Fidelity Homestead Association.
Plaintiff had obtained a judgment in the Twenty-Fourth Judicial District Court against Russell Construction Corporation in the sum of $6,326.96. The present suit was instituted in the Civil District Court for the Parish of Orleans to enforce the judgment by garnishment process and Fidelity Homestead Association was made garnishee with an order to answer the usual interrogatories. Said garnishee was duly cited and served on February 2, 1960.
On' February 24, 1960, the garnishee answered the interrogations to the effect that Louis P. Audler, Jr., as owner, Russell Construction Corporation, as contractor (plaintiff’s judgment debtor), and the Fidelity Homestead Association, as financing institution, and the Trinity Universal Insurance Company, as surety, entered into a *574 contract, whereby the contractor agreed to erect a residence for the owner for a certain price to be paid by the financing institution ‘for the account of the owner in certain described progress payments as they become due under the terms of the contract. The ■answer also recited eight additional similar separate contracts, each by the Fidelity Homestead Association, as financing institution, Russell Construction Corporation, as •contractor, one of eight additional named .persons, as owner, and the Trinity Universal Insurance Company as surety for the contractor. The terms of each of these eight ■additional contracts were the same as the •one with Audler, whereby the contractor would construct a residence for each of said •owners for a fixed price to be paid to the contractor by the financing institution for ■the account of each owner in specified progress payments as they became due for work ■as it progressed.
The answer to the interrogations further said that on September 28, 1959, the Russell Construction Corporation assigned and transferred unto Trinity Universal Insurance Company any and all sums of money then due or to become due to said contractor by Fidelity Homestead Association for account of said owners by virtue of said nine ■contracts, which assignment gave unto said Insurance Company full power and authority to receive and receipt for same. At the time of service of the garnishment process on Fidelity Homestead Association as garnishee, it had a certain named amount in its possession in. connection with each respective contract. (Total amount of these funds shown by the schedule in the answer exceeded the amount of plaintiff’s judgment against Russell Construction Corporation).
On motion of plaintiff a rule nisi issued ordering said garnishee to show cause why the amount of plaintiff’s judgment against Russell Construction Corporation should not be paid to plaintiff out of said funds. The rule was made returnable April 8, 1960.
On April 5, 1960, Trinity Universal Insurance Company intervened in this suit alleging that any funds in possession of the garnishee in connection with the owners’ building contracts referred to had been assigned and transferred to said intervenor as the surety on the performance bonds of said Russell Construction Corporation, for the reason that said contractor had defaulted on all said building contracts and said inter-venor was in the process of completing the construction of said buildings. Said inter-venor claimed to be entitled to be decreed as the owner of said funds by preference by virtue of said assignment on September 28, 1959.
The evidence on the trial of the rule shows that each respective owner had borrowed by mortgage from Fidelity Homestead Association (the garnishee) an amount sufficient to pay the contract price of a residence to be built for such owner by said contractor; that by the terms of the said four-way contracts the owners authorized the Fidelity Homestead Association to hold money for the account of the owners and to make payments for the owners to the contractor as the work progressed up to the amount of the loan; that on default of the contractor, the surety company was carrying on the work in accordance with its obligation under the performance bonds which it signed as surety for the contractor; that prior to the consummation of the said four-way contracts as referred to above the contractor made formal written application to the insurance company for it to execute the performance bond for each residence as the contractor’s surety; that in said application the contractor agreed to hold the insurance company harmless against loss in the event of the contractor’s default and to transfer any money representing the contract price to which contractor would otherwise be entitled in connection with said construction; that notice of the terms of this application was not given to the owner or to the Fidelity Homestead Association; that in the course of construction the contractor gave formal notice to the insurance company that he was unable to continue to complete the constructions; that in order to *575 carry out his obligation contained in the application to the insurance company to act as his surety he made formal transfer and assignments September 28, 1959, to the surety company of all money in possession of the Fidelity Homestead Association belonging to each owner in connection with each contract; that notice of this assignment was given to the Fidelity Homestead Association on September 28, 1959, and the said surety company proceeded with the work and drew from the Fidelity Homestead Association the payments on account of each owner in connection with each contract as the work progressed.
Counsel for plaintiff contends that the formal terms and conditions contained in the contractor’s written application not having been encompassed in the performance bond and notice of such terms and conditions not having been given to the owner or to the Fidelity Homestead Association, said agreement by the contractor to indemnify the surety company in event of the contractor’s default became null and of no effect, and as a consequence thereof the formal assignment of September 28, 1959 was without consideration and also a nullity. The surety company having collected its premium to act as surety was already bound to perform the construction contract on the contractor’s default. In making this ingenuous argument, counsel apparently loses sight of the fact that the terms and conditions of the contractor’s application to the insurance company to induce it to become the contractor’s surety on the performance bond is a matter only between the contractor and the insurance company and does not concern the owner and the financing institution. The agreement of the contractor to protect the surety company against loss is a valid and binding obligation of the contractor and that assignment of September 28, 1959, is a step toward fulfillment of this obligation, and, moreover, the money held by the Fidelity Homestead Association for each of the owners did not belong to the contractor except insofar as the contractor was entitled to collect the progress payments as they became due should he perform his contract to construct the buildings. His formal assignment is effective against each owner’s fund only to the extent of the amount that may become due as the work progresses and the assignment was necessary to enable the Homestead Association, to release the money for the account of the owner. The ownership of the money is in the owner, the borrower, until it is paid out in settlement of the construction price as the work progressed. The contractor having discontinued construction of the buildings, said contractor was no longer entitled to draw any of the money at any time, and the contractor’s assignment of September 28, 1959, was not a transfer of anything that belonged to the contractor, but the contractor’s authority to pay the money to the bonding company was necessary because the contractor was a party to the arrangement under which the Fidelity Homestead Association was holding the money. When the garnishment was served in an attempt to seize the money it did not belong to the contractor, and even if the contractor had not defaulted on his contract that money would only become payable to the contractor in the future course of construction as the work progressed.
Counsel argues further that at the time of the assignment of September 28, 1959, the bonding company knew of the insolvency of the contractor and, therefore, the assignment gave the surety company an advantage over other creditors in violation of Article 1984 of the LSA-Civil Code. Again counsel loses sight of the fact that the assignment did not transfer to the surety company anything that belonged to the contractor at that moment. There was no cession of goods or money belonging to the contractor to the deprivation of other creditors. His refusal to execute the assignment would not have enlarged his estate to the aid of other creditors. Not one penny of the money which the surety company will collect by the assignment belonged at that time to the contractor. The money belonged to the owners and the owners are entitled to have *576 it used for the construction of their residences. If finally there is a profit, it would belong to the contractor, and the judgment herein takes care of that contingency. Therefore, this plaintiff was not defrauded in any way and the authorities cited by counsel are not in point.
The judgment appealed from is affirmed.
Judgment affirmed.